### LAHNE v. SEAICH.

(Supreme Court, Appellate Division, First Department. May 8, 1903.)

1. NEGLIGENCE—DRIVING ON STREETS—CARE REQUIRED.
　　One driving a horse along the streets of a city is bound to anticipate that pedestrians may be at a crossing, and if he fails to look for them, and does not, so far as in his power, avoid them, he is guilty of negligence.
2. SAME—EXCESSIVE SPEED.
　　The driving of a vehicle toward a street crossing at a rapid rate shows negligence.
　　Van Brunt, P. J., dissenting.

Appeal from Trial Term, New York County.

Action by Mary Lahne against William H. Seaich. From a judgment for plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

¶ 1. See Highways, vol. 25, Cent. Dig. §§ 464, 466; Municipal Corporations, vol. 36, Cent. Dig. § 1515.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PAT-
TERSON, INGRAHAM, and LAUGHLIN, JJ.

Charles C. Nadal, for appellant.
Henry D. Hotchkiss, for respondent.

PATTERSON, J. This is an action to recover damages for per-
sonal injuries sustained by the plaintiff, who was run over by a
cab driven by one of the defendant's servants. On the trial, the
plaintiff had a verdict, from the judgment entered upon which, and
from an order denying a motion for a new trial, the defendant ap-
peals.

The evidence given on behalf of the plaintiff, and which prevailed
with the jury, clearly established the negligence of the defendant's
servant in driving the cab. It was shown that the plaintiff at about
8 o'clock on the evening of December 31, 1899, was standing, with
a companion (who died before the trial), at the curb at the south-
west corner of Fifth avenue and Fifty-Third street, in the city of
New York, intending to cross to the easterly side of the avenue.
There were cabs going south, which passed the plaintiff, and there
were two cabs going north, one of which was driven by a servant
of the defendant. The cabs proceeding northward were going at a
very rapid rate of speed. It was a clear, moonlight night; and one of
the witnesses for the plaintiff (Mr. Rhoades) was able to see the cabs
moving northerly after they had proceeded a block beyond him. This
witness was walking on the westerly side of the avenue, and saw
the two cabs which passed him apparently racing, and observed that
one, identified as being driven by the defendant's servant, swerved
to the left; and it is not denied that the plaintiff was struck and
injured by that cab. It fully appears that the turning to the left of
that cab caused its contact with the plaintiff. The issue of fact in
the case was whether the plaintiff negligently walked into, and was
struck by, the cab, or the horse drawing it, or whether she was struck
by the driver negligently proceeding at this rapid rate of speed and
turning out to the left. The theory of the defendant was that the act
of the driver in thus turning out was to avoid contact with the plain-
tiff, while, on the other hand, that of the plaintiff was that, had the
driver proceeded in a straight line, or had he performed the duty which
the law imposed upon him, of careful driving and looking out for
persons crossing the street, contact with the plaintiff would have been
avoided.

The jury were entitled to believe, as they did, that the driver
of the defendant's cab was proceeding at a very rapid rate of speed,
and without regard to the safety of persons crossing the street, and
that the plaintiff was carefully crossing it. According to the testi-
mony of witnesses, the speed of the two cabs going northward was at
a rate between 6 or 7 and 15 miles an hour. The duty of a driver
in a city street, with respect to pedestrians crossing the street, is
plain. In Murphy v. Orr, 96 N. Y. 14, it is held that one driving
horses along the streets of a city is bound to anticipate that pedestri-
ans may be at a crossing, and must take reasonable care not to injure

them. If he fails to look out for them, or when he has seen them, and does not, so far as is in his power, avoid them, he is chargeable with negligence. In Moebus v. Herrmann, 108 N. Y. 349, 15 N. E. 415, 2 Am. St. Rep. 440, it is held that a person on foot, desiring to cross a city street, has a right to cross, not only at the cross-walk, but wherever he pleases, and one driving horses upon the street is bound to be watchful at all points, as well as at the crossings, so as not to injure persons crossing. Here the defendant's servant was driving impetuously, as the jury had the right to infer. The speed was so great as of itself to show negligence in approaching a cross-walk. The night was clear. By care and attention, he could have seen the plaintiff. He swears that the plaintiff came quickly and suddenly, but there appears to be no doubt that it was the rapid rate of speed, and the driver's disregard of his duty to anticipate that passengers might be crossing the street, in connection with his sudden turning out to the left, that constituted his negligence.

The judgment and order appealed from should be affirmed, with costs.

INGRAHAM J., concurs.

LAUGHLIN, J. I fully concur in the views expressed by Mr. Justice PATTERSON; but I think the time is opportune to draw attention to the rule of law that upon cross-walks, at least, the rights of pedestrians are equal to the rights of vehicles, and that neither has a right of way over the other. The drivers of vehicles have assumed the right of way over pedestrians so long that it is an uncommon thing to see the rights of the latter respected by the former. Except at crossings where, at great public expense, the municipal authorities have found it necessary to station patrolmen, vehicles are generally driven over cross-walks and intersecting streets and around corners at the same speed as in the middle of the block; and pedestrians, whether men, women, or children, are often obliged to wait a long time, or run by or dodge passing vehicles, in order to get across the street and proceed on their way. If the street railway company should block the way of pedestrians with one car after another in such close proximity that they could not get across, every one would agree that this was an infringement of the ·rights of pedestrians which should not be tolerated. Pedestrians wait at a corner for one vehicle which is approaching to pass, and another after another follows in close succession, in utter disregard of the desire and right of pedestrians to cross the street. Any pedestrian has a right to cross at will, exercising ordinary care for his own safety, and having due regard to the rights of those traveling by vehicles; but a pedestrian whose business is urgent cannot wait indefinitely, and has a right to cross as best he can; and if, in asserting that right, he is run down by a vehicle proceeding in disregard of his rights, he should not be held guilty of contributory negligence, and the driver or owner of the vehicle should be held responsible for the damages. Even at the hours when traffic is greatest, and on lower Fifth avenue, where policemen are stationed at crossings, there seems to be

no difficulty in vehicles which are going up and down the avenue, several abreast, slowing up periodically and allowing pedestrians to cross. There is no good reason why drivers should not do this voluntarily, as far as practicable, at other crossings where policemen are not stationed. If they did, there would be fewer accidents, and the rights of those who are unable to travel in carriages, and obliged to travel on foot, would be at least somewhat respected.

McLAUGHLIN, J., concurs.  VAN BRUNT, P. J., dissents.